## 11353

### STATE v. SIMON

#### (120 S. E., 230)

1. CRIMINAL LAW—JURY—PROCEEDING WITH TRIAL WITHOUT OBJECTION, WAIVER OF CLAIM OF LACK OF TIME TO PREPARE, AND ABSENCE OF CHOICE IN SELECTION OF JURORS.—Where the crime of receiving stolen goods was alleged to have been committed on Saturday, the case was tried the following Tuesday, and, though defendant and his counsel arrived after the jury panel had been selected, they proceeded to participate in the trial without making any objections until after verdict, defendant so waived any right to complain of lack of time for preparation of case, and absence of choice in selecting jurors, that the action of the trial Court in denying his motion for new trial on such grounds could not be deemed erroneous as a matter of law nor an abuse of discretion, there being no showing of injury through surprise or mistake.

2. CRIMINAL LAW—DEFENDANT MAY BE TRIED IN HIS ABSENCE FOR RECEIVING STOLEN GOODS.—The offense of receiving stolen goods is a misdemeanor for which defendant can be legally tried in his absence.

3. CRIMINAL LAW—PARTY NOT ENTITLED TO RESERVE VICES IN TRIAL FOR USE IN CASE OF DISAPPOINTMENT.—A party cannot take his chances of a successful issue, and reserve vices in the trial, of which he has notice, for use in case of disappointment.

4. CRIMINAL LAW—ALLOWING SEALED VERDICT IN MISDEMEANOR CASES MATTER WITHIN TRIAL COURT'S DISCRETION.—Allowing a sealed verdict in a criminal case involving a misdemeanor is a matter which rests in the sound discretion of the trial Court.

NOTE: On knowledge necessary to convict one of receiving stolen goods, see note in 22 L. R. A. (N. S.), 833.

For authorities discussing questions relating to sealed verdicts, see note in 23 L. R. A., 732.

5. CRIMINAL LAW—NO ABSOLUTE RIGHT TO HAVE JURY POLLED.—Neither party has an absolute right to have the jury polled.

6. CRIMINAL LAW—MOTION TO POLL JURY RENDERING SEALED VERDICT ORDINARILY GRANTED.—Where a sealed verdict has been allowed, a motion to poll the jury at the time of the publication of the verdict will ordinarily be granted.

7. CRIMINAL LAW—ERROR TO REQUIRE JURY TO AGREE OR REMAIN IN JURY ROOM FOR STATED TIME.—The only issue in a prosecution for receiving stolen goods was whether defendant had knowledge that the goods were stolen, and the testimony was brief. After the jury had deliberated for 2 hours they reported that they were evenly divided. *Held,* that instructing them to the effect that they could either agree on a verdict or remain in the jury room for 15½ hours, was reversible error, in view of the Code Civ. Proc., 1922, § 582, providing that if a jury should be sent out for further deliberation and should return a second time without an agreement they should not be again sent out without their own consent.

8. RECEIVING STOLEN GOODS—BELIEF WITHOUT ACTUAL KNOWLEDGE THAT GOODS WERE STOLEN HELD SUFFICIENT.—Actual knowledge that the goods were stolen is not essential to a conviction for receiving stolen goods; a belief that the goods were stolen being sufficient.

Before TOWNSEND, J., Richland, May 1923. Reversed and remanded.

Metry Simon was convicted of receiving stolen goods and he appeals.

Mr. *Cole L. Blease,* for appellant, cites: *Verdict should have been directed:* 116 S. E., 926; 116 S. E., 927. *Must be guilty knowledge to constitute offense of receiving stolen goods:* 61 S. E., 1072; 39 S. C., 343; 61 S. E., 1073; 109 S. E., 119; 107 S. E., 906. *Coercion of jury:* 41 L. R. A., 644; 90 So., 596. *Verdict can be received in absence only by agreement:* 43 L. Ed., 62. *Statement by jurors after trial improper:* 35 S. C., 659; 90 S. E., 596. *Error to charge jury that "belief without knowledge" was sufficient:* Const. 1895, Art. 5, Sec. 26; 61 S. E., 1073.

Mr. *A. F. Spigner, Solicitor,* for the State.

December 4, 1923.

The opinion of the Court was delivered by MR. JUSTICE MARION.

The defendant was convicted of receiving stolen goods. There was evidence tending to establish that the defendant, a storekeeper in the environs of Columbia, bought from a negro boy, for the sum of $12, a stolen case containing 10,000 cigarettes, of the value at wholesale of $64. His appeal raises, substantially, the points which will be stated and considered in the following order.

The first point upon which a reversal is sought is thus stated:

"Because the defendant was not given a fair and impartial trial, as guaranteed by the Constitution, in that (a) neither he nor his attorney had choice in the selection of any jurors; (b) that the haste in the trial of the case forbade the defendant from preparation, the magistrate stating the next term of the Court, when Court was then in session, thereby misleading the defendant."

The record fails to disclose any satisfactory factual basis for this assignment of error. The defendant's bail bond or recognizance is not in the record. The only pertinent statement which appears therein as an admitted fact is that "the defendant was called three times at the door, and did not answer, but later appeared with his attorney." From portions of the defendant's testimony, taken in connection with remarks of his counsel on a motion for new trial appearing in the record, we gather, however, that the cigarettes were bought by defendant on Saturday morning; that defendant was arrested on the same day, Saturday afternoon; that he was given a preliminary hearing on the following Monday afternoon, when he was bound over to the "next term" of Court; and that he was indicted and brought to trial on the next day, Tuesday, in the Court of general sessions which was then sitting and had been in session on the day before when the preliminary was held. If the facts were as indicated, it is sufficiently apparent that this was certainly not a case of justice moving with leaden feet. In disposing of this ground on the motion for new trial, the circuit Judge said:

"The case was a misdemeanor, and the defendant was not here when it was called, and when the jury was impaneled, although he was called at the door. He came in afterwards, and participated in the trial, without any motion then being made to have the jury discharged in order to allow the selection of another jury."

It further appears from the record that all witnesses 2, 3 for the State were cross-examined by defendant's counsel. It does not appear that, prior to the verdict, any objection was made to proceeding with the trial, or any appropriate motion entered upon the ground that defendant was taken by surprise, or that he had not had time to prepare his defense, or that material witnesses were absent, or that he had been deprived of a substantial right in not having opportunity to challenge jurors. The offense charged was a misdemeanor, for which defendant could be legally tried in his absence. *State v. Rabens,* 79 S. C., 542; 60 S. E., 442, 1110. By appearing and participating in the trial without objection, under the circumstances indicated, we are clearly of the opinion that the defendant waived any right to assert that he had been deprived of due process of law or otherwise subjected to such unjust and oppressive treatment as would vitiate the action of the trial Court for either error of law or abuse of discretion.

"The general principle that a party cannot take his chances of a successful issue, reserving vices in the trial, of which he has notice, for use in case of dissapointment, is universally recognized and obviously just." *State v. Ballew,* 83 S. C., 82; 63 S. E., 688; 64 S. E., 1019; 18 Ann. Cas., 569; 16 C. J., 1128, § 2626.

See, also, *State v. Rabens, supra.*

In the light of that clearly applicable principle, and in the absence of any affirmative showing of injury from surprise, inadvertence, or mistake, upon the motion for new trial, it may not be held that the ruling of the Circuit Judge was erroneous as a matter of law, or constituted reversible abuse of discretion.

The second point (exceptions 4, 5 and 6,) to which attention will be directed, is the contention that the trial Court committed error in permitting the jury to render a sealed verdict, without defendant's consent, and in not requiring the jury to be polled in open Court when the verdict was formally received and published. At the time the Court instructed the jury that a sealed verdict could be found, no objection was interposed by defendant, but the next morning the jury being in their seats, and having been polled as to attendance by the clerk, defendant's counsel noted an exception to receiving the verdict. The view that the allowance of a sealed verdict and a separation of the jury before its return into Court is a mere matter of practice which may be regulated by the Courts or by the Legislature without invading any of the guaranteed or essential rights of a person accused of crime, we think, is supported both by reason and by the greater weight of authority. 27 R. C. L.,837, § 5.

"By the most generally recognized practice * * * the allowance of a sealed verdict is within the discretion of the Judge, which does not require any agreement of parties or counsel, and may be exercised without their consent." 27 R. C. L., 837, § 5.

The allowance of a sealed verdict in a criminal case involving a misdemeanor is not in conflict with the recognized practice in this State, and is a matter which properly rests in the sound discretion of the trial Court. The controlling element in determining the limits of the convenience of jurors and the discretion of the Judge is the necessity that the verdict shall not only be fair, unbiased, and free from extra-judicial influences, but beyond reasonable apprehension of danger that it is otherwise. There is no suggestion that the sealed verdict returned and published in the case at bar was not the verdict agreed upon before the separation of the jury, or that the nature of the verdict was in any manner affected by the dispersion of the jury after the verdict was reached.

If the defendant desired that the jury be polled for the purpose of affirming the verdict in open Court, he should have so requested in apt time. While under the well-settled rule in this State neither party has an absolute right to have the jury polled (*State v. Daniel,* 77 S. C., 53; 57 S. E., 639, and cases there cited), we have no doubt that where a sealed verdict has been allowed, sound practice requires that such motion to poll the jury at the time of the publication of the verdict should ordinarily be granted. But the motion was not made in this case, and no ground exists for imputing reversible error to the trial Court as to a matter upon which no ruling was sought or made. Since the contention of appellant in this aspect of the case is directed to assignment of error in matters which were within the discretionary power of the Circuit Judge, and as to which no abuse of discretion has been shown, the contention cannot be sustained.

The third point raises a question that is not free from difficulty, viz., whether the rendition of verdict was unduly influenced by the action of the trial Judge in notifying the jury after a considerable period of deliberation that they would be kept together at night in the jury room, alleged to be "a close room, unfit for such uses," for a specified time, about $15\frac{1}{2}$ hours, unless an agreement was sooner reached. The point is predicated upon a feature of the trial, which is thus reported in the record:

"The jury retired at 4 p. m., and at 5:40 p. m. came into the courtroom.

"The Clerk: Mr. Foreman, have you agreed on a verdict?

"The Foreman: We have been unable to agree on a verdict.

"The Court: Don't you think if I leave you there longer—

"The Foreman: I think not. There seems, on a six and six division, that there are only two, we think—

"The Court: Don't tell me how you stand. It is now 10 minutes of 6. I will give you this envelope, and if

you agree between now and 9:30 tomorrow morning, you can come out. If you do not agree between now and then, I can talk to you then, and, if I find you still cannot agree, I would not keep you there any longer. If you agree, here is an envelope; write your verdict on the indictment, and seal it up, and tell the constables you have agreed. Your verdict will be either guilty or not guilty. * *. * If you do not agree upon a verdict of either guilty or not guilty between now and tomorrow morning—

"Juror: I have· got my wife and small children on the street, and I don't know what to do. I would like to have leave to speak to my brother, Lawyer Busby, because I have to make some arrangement.

"The Court: Keep your seats for the present. We will wait for him. I do not suppose anybody objects to his talking to his brother.

"The Foreman: For further information, about what would be the length of the sentence in case of conviction?

"The Court: Let me see what the statute says. Section 204. It says if a person is found guilty of receiving stolen goods it is a misdemeanor; the limits of punishment might be anywhere from three months to ten years.

"The Solicitor: They can recommend to·mercy?

"The Court: Oh, yes.

"The Court: Mr. Juror, could you give the message to this gentleman here?

"Juror: Yes, sir.

"The Court: Now, if you want supper, call the sheriff, and he will give it to you. If you want breakfast, call on the sheriff."

The witnesses were few, the testimony brief, and the facts within exceedingly narrow compass. The one point in the case was whether the defendant in buying the cigarettes had guilty knowledge of the fact that they were stolen goods. When the jury came in and reported a disagreement they had had nearly two hours for consideration

and deliberation. According to the foreman they then stood six and six. The discretion of the Circuit Judge as to the time a jury shall be kept together is to be exercised in the light of the facts of the particular case and of the limitation upon that discretion imposed by our statute law (Section 582, Code Civ. Proc. 1922) as follows:

"When a jury, after due and thorough deliberation upon any cause, return into Court without having agreed upon a verdict, the Court may state anew the evidence, or any part of it, and explain to them anew the law applicable to the case, and may send them out for further deliberation; but if they return a second time without having agreed upon a verdict they shall not be sent out again without their own consent, unless they shall ask from the Court some further explanation of the law."

What constitutes "due and thorough deliberation upon any cause" by the jury is unquestionably a matter primarily for the determination of the Circuit Judge in the exercise of a sound discretion (*State v. Drakeford,* [S. C.,] 113; S. E., 307); but there would seem no room for doubt, that it was the clear intendment of the statute to give the jury the right to indicate to the Court its own view of when time for due and thorough deliberation had elapsed by returning "a second time without having agreed upon a verdict," and to make that action decisive of the question if accompanied by any expression of unwillingness to retire for a third time (*State v. Kelly,* 45 S. C., 666; 24 S. E., 45; *State v. Rowell,* 75 S. C., 494, 509; 56 S. E., 23). If so, it is obvious that the effect of a requirement that the jury shall be kept together for a specified time, unless an agreement is sooner reached, would be to deprive the jury of the right to an earlier discharge in the contingency provided for by the statute. Such bearing of the statute is to be considered in connection with the general rule which is thus stated by the author of an extended note on this subject (11 Ann. Cas., at page 1136):

"In most of the jurisdictions it is held that the trial Court should not mention how long he intends to keep the jury deliberating"—citing cases.

In the case of *State v. Shuman*, 106 S. C., 150; 90 S. E., 596, this Court, speaking through Mr. Justice Gary, approved as "à correct statement of the rule" the view announced in *Green v. Telfair*, 11 How. Pr. (N. Y.,) 262. Certain pertinent expressions there quoted from the New York case are as follows:

"An attempt to influence the jury by referring to the time they are to be kept together, or the inconvenience to which they are to be subjected, in case they shall be so pertinacious as to adhere to their individual opinions, and thus continue to disagree, cannot be justified. * * * I think he [the trial Judge] has no right even to allude to his own purposes as to the length of time they are to be kept together," etc.

So difficult and delicate is the problem involved from the standpoint of the trial Court that we think it may not be safely laid down as an invariable rule that the action of a trial Court in merely advising a jury that they have a choice between finding a sealed verdict or remaining together during a regular recess or period of adjournment of the Court will amount to coercion. But, applying to the facts of this case the general rule that a jury should not be informed of the Court's intention to keep them together for a specified time, in connection with the provisions of our statute law above adverted to, we are of the opinion that reasonable ground exists for the apprehension that the verdict here found was the result of the Judge's ultimatum rather than the product of that concurrence of the deliberate and conscientious judgments of 12 jurors, based upon the evidence, which, in contemplation of law, the verdict of a jury is intended to represent After nearly 2 hours deliberation, the jury announced its inability to agree. In response to the Court's sug-

gestion that they might be able to agree if left there longer, the foreman promptly tendered the opinion that he thought not, that there was a six and six division, etc. When the Court announced at 10 minutes to 6 that if they could not agree upon a sealed verdict he would talk to them again at 9:30 the next morning, one of the jurors stated that his wife and small children were upon the streets, and that he did not know what to do. The foreman inquired as to what would be the sentence in case of conviction, and was told that it might be "anywhere from 3 months to 10 years." At the solicitor's suggestion they were told they could recommend to mercy. With the information that if they wanted supper or breakfast they should call upon the sheriff, the jury were then sent back to their room. When the jury were thus squarely faced with a night in the jury room, absence from unprotected families, and a grueling endurance test of 15½ hours in the kind of quarters usually available for that purpose, we are unable to resist the conclusion that the Judge's definite announcement, in effect, that the jury could either find a verdict and walk out or remain in the jury room for 15½ hours was a more potent influence in the writing of the verdict than any consideration having to do with the law and the evidence. Under all the circumstances of this particular case, we are impressed with the view that the verdict was improperly influenced to the defendant's prejudice by what was in the nature of a Hobson's choice thus presented to the jury. The appellant's third exception must therefore be sustained.

The next point (exception 2), directed to assignment of error in the refusal of the Circuit Judge to grant motions for a directed verdict of "not guilty" is untenable. As a new trial must be had, however, we deem it proper to refrain from a review and discussion of the evidence in that connection.

The only remaining contention (exception 8) is that
8    the Circuit Judge, in passing upon the motion to
direct a verdict, erred in holding, with respect to
knowledge of the theft on the part of the receiver of
stolen goods, that "a belief without actual knowledge is
sufficient." The ruling was in accord with the law as
stated in *State v. Rountree*, 80 S. C., 387; 61 S. E., 1072;
22 L. R. A., (N. S.,) 833, and was not erroneous.

The judgment of the Circuit Court is reversed, and a
new trial ordered.

Reversed.